**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DONALD HERNANDEZ MARTINEZ,** | : | **Civil No. 3:23-CV-1788** |
| | : | |
| **Plaintiff** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **v.** | : | |
| | : | |
| **LELAND DUDEK,** | : | |
| **Acting Commissioner of Social Security,[1]** | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM OPINION</u>**

I.  **<u>Introduction</u>**

While Social Security appeals are judged against a deferential substantive standard of review, case law imposes a clear obligation upon Administrative Law Judges (ALJs) to fully articulate their rationale when denying benefits to disability applicants. This duty of articulation is essential to informed judicial review of agency decision-making since, in the absence of a well-articulated rationale for an ALJ's decision, it is impossible to ascertain whether substantial evidence supported

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for the previously named defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

that decision. At a minimum, this duty of articulation requires the ALJ to draw a legal and logical bridge between any factual findings and the final conclusion denying the disability claim.

One area where this duty of articulation is particularly important involves reconciling any inconsistences between the ALJ's residual functional capacity (RFC) assessment for a claimant and the job titles set forth in the Dictionary of Occupational Titles, the standard reference work relied upon by Vocational Experts when testifying regarding whether there are jobs that a claimant can perform. Oftentimes the ALJ's decision regarding a claimant's residual functional capacity will not fit neatly within one of the job titles described in the Dictionary of Occupational Titles. When this occurs:

> an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) "elicit a reasonable explanation" where an inconsistency does appear, and (3) explain in its decision "how the conflict was resolved." Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir.2002). An ALJ's failure to comply with these requirements may warrant remand in a particular case. Rutherford, 399 F.3d at 557.

Zirnsak v. Colvin, 777 F.3d 607, 617 (3d Cir. 2014).

The instant case illustrates the importance of providing a clearly articulated explanation resolving any inconsistencies between a claimant's RFC and the job titles under the Dictionary of Occupational Titles which the ALJ concludes the claimant can perform. In this case, the ALJ found that the plaintiff, Donald Martinez,

2

could perform a limited range of light work involving only occasional overhead reaching. (Tr. 46). Yet, the ALJ denied this claim after determining that Martinez "is capable of performing past relevant work as a box bender." (Tr. 52). However, under the Dictionary of Occupational Titles, the job of a box bender entails medium exertional effort, and requires constant reaching, exertional levels that exceeded Martinez's RFC as found by the ALJ.

While the ALJ attempted to elicit testimony from a vocational expert to bridge the legal and logical divide between this RFC and the Dictionary of Occupational Titles job description, upon consideration, we find that those efforts were insufficient and the logical nexus that is needed in this case to reconcile these inconsistencies does not exist. Thus, in the instant case we conclude that the ALJ's burden of articulation has not been. Accordingly, we will remand this case for further consideration and evaluation by the Commissioner.

## II.  <u>Statement of Facts and of the Case</u>

### A. <u>Introduction</u>

Donald Martinez filed a Title XVI application for supplemental security income benefits with the Social Security Administration on September 3, 2019. (Tr.

40).[2] In this application Martinez indicated that he was disabled due to the cascading array of physical impairments, including: degenerative disc disease of the lumbar spine; asthma; bilateral upper extremity degenerative joint disease; and obesity. (Tr. 43). Martinez was born in December of 1958, was in his sixties by the time of these disability proceedings and was considered a person approaching retirement age at the time of his disability hearing. (Tr. 97). Martinez had lived in Nicaragua, had limited English fluency, and often relied upon an interpreter at this hearing. (Tr. 59-96). He also had a limited education and a work history that was, for the most part, marked by strenuous manual labor in the past, work which it was undisputed he could no longer perform. (Tr. 316-33).

B. **Martinez's Medical Impairments.**

Every medical expert who considered Martinez's case found that he was significantly impaired, while voicing somewhat different views regarding the degree of that impairment. Turning first to those caregivers who actually treated Martinez, a number of treating sources who cared for Martinez over a span of years either described him as disabled or stated that this elderly worker could only perform sedentary work. For example, in August of 2019, Cheryl Stephen, CRNP, stated that

---

[2] Martinez also separately filed for Title II benefits, but it was determined that he did not qualify for those benefits, a decision which the plaintiff does not challenge in this appeal.

4

Martinez was temporarily disabled from August 1, 2019 to August 8, 2020. (Tr. 52). Further, Adam Hyatt, M.D., who was treating Martinez for his shoulder impairments, opined that he was limited to sedentary duty only as of March 25, 2021, noting that Martinez had shoulder tenderness, decreased range of motion, and decreased strength. (Tr. 771). A second treating source, Dr. Samuel Ponce, who had cared for Martinez in Nicaragua, also opined in December of 2021 that the plaintiff was limited to sedentary work. (Tr. 917-18).

Likewise, on March 20, 2020,  Dr. Ziba Monfared, consultative examiner, issued a report following a physical examination of the plaintiff which identified a series of impairments experienced by Martinez. In this report, the doctor opined that Martinez was limited to a range of light work, finding that he could lift and or carry twenty pounds occasionally, sit for eight hours, stand for fifteen minutes, and walk for less than fifteen minutes at one time, sit for eight hours, stand for one hour, and walk for less than one hour total, required the use of a cane to ambulate, could occasionally reach overhead and never reach any other directions, frequently handle, finger, and feel, occasionally push/pull, frequently operate foot controls, occasionally climb ramps and stairs, stoop, and crawl. (Tr. 423-27).

Further, on March 10, 2021, Dr. Josie Mae Henderson, State agency medical consultant, found based upon a review of clinical records that Martinez was confined

to a limited scope of light work in that he could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for four hours, sit for six hours, never climb ladders, ropes, or scaffolds, occasionally climb ramps and stairs, occasionally balance, stoop, kneel, crouch, and crawl, occasionally reach overhead bilaterally, and must avoid concentrated exposure to extreme cold, wetness, humidity, pulmonary irritants, and hazards. (Tr. 112-132).[3]

Thus, there was a medical consensus that Martinez, a worker approaching retirement age, was significantly limited in terms of the work he could perform.

### C. **ALJ Hearing and Decision**

It was against this clinical backdrop that an ALJ conducted a hearing regarding Martinez's disability application on December 19, 2021. (Tr. 59-96). Martinez and a vocational expert both appeared and testified at this hearing, with Martinez utilizing the assistance of a Spanish interpreter. (Id.)

Although the ALJ later determined that Martinez only worked sporadically after 2003 due to his impairments, (Tr. 40), in the course of this hearing the ALJ became fixated on one instance of this sporadic employment, some work that Martinez had done through a temp agency, Aerotek, some eight years earlier in 2014.

---

[3] Another state agency expert reached similar conclusions, but that opinion was deemed unpersuasive by the ALJ.

6

(Tr. 65-66). The ALJ focused on this brief employment as potential past relevant work which might defeat a disability claim. (Id.) However, the presentation on this question at the agency hearing was confused, confusing, and inconclusive.

Several factors contributed to this confusion. First, Martinez was able to only provide limited, incomplete responses when asked about this work experience which dated back eight years. According to Martinez, among other duties, he was "a helper to make boxes." (Tr. 68). Martinez described this task as part-time work which was done seated and entailed lifting only three to four pounds. (Tr. 68-69). But Martinez's testimony, read as a whole, indicated that he also did an array of other unrelated tasks, although none of these tasks involved lifting or carrying more than ten pounds. (Tr. 68-73).

Martinez's confused testimony in turn led to confusion on the part of the vocational expert who was charged with the responsibility of determining whether this labor constituted past relevant work for purposes of disability analysis. In fact, the vocational expert candidly acknowledged that "I sort of got lost" while trying to follow Martinez's account of this past work experience. (Tr. 71).

This confusion may also have been shared by the ALJ. During the course of the hearing the ALJ referred to past written submissions by the plaintiff when he inquired regarding whether Martinez's past work fit the Dictionary of Occupational

Titles' description of the job of a box bender. (Tr. 89-90). However, none of these written submissions contained any reference to working as a box bender. (Tr. 316-33). Instead, these documents described a work history that generally entailed heavy work, which all medical sources agreed Martinez could no longer perform.

This confusing process led to a confused opinion by the vocational expert who testified that Martinez's prior work included the job title of a box bender, and that a person with Martinez's impairments could still perform the job of box bender. (Tr. 90-91). This was a curious conclusion on several scores. First, the Dictionary of Occupational Titles defines a box bender as work which exceeded Martinez's physical capabilities. According to the Dictionary of Occupational Titles a box bender job entails:

> Medium Work - Exerting 20 to 50 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Light Work.

641.687-010 Box Bender, DICOT 641.687-010.

In addition, the task of a box bender, as defined by the Dictionary of Occupational Titles, requires constant reaching and handling, levels of manual dexterity which went far beyond that which medical experts found Martinez could

perform. Moreover, in this testimony the vocational expert qualified her opinion by stating that Martinez could only do light work as a box bender, alleging that she recalled Martinez to have testified that he lifted twenty pounds at this job. (Tr. 91). The vocational expert's recollection, however, was at odds with Martinez's actual testimony. When asked what was the most he lifted when making boxes in 2014, Martinez testified that he was limited to lifting "three or four pounds." (Tr. 70).

This confusion carried over to the ALJ's September 13, 2022 decision denying Martinez's disability application. (Tr. 34-53). In that decision, the ALJ first concluded that Martinez had not engaged in substantial gainful activity since his September 3, 2019, application date. (Tr. 43). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Martinez suffered from the following severe impairments: degenerative disc disease of the lumbar spine; asthma; bilateral upper extremity degenerative joint disease; and obesity. (Id.)

At Step 3 the ALJ determined that Martinez did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 44-45).

The ALJ then fashioned the following highly restrictive RFC for Martinez:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can lift and/or carry 20 pounds occasionally and ten pounds frequently, he can sit for six

hours, and he can stand or walk for four hours each per eight-hour workday. He can occasionally climb ramps and stairs and occasionally balance, stoop, kneel, crouch, and crawl. He cannot climb ladders, ropes, or scaffolds. Occasional overhead reaching with the bilateral upper extremities. No concentrated exposure to extreme cold, wetness, humidity, fumes, dusts, gases, odors, poor ventilation, unprotected heights, and moving machinery parts.

(Tr. 46).

The ALJ then curtailed his analysis of this claim at Step 4, concluding that: "The claimant is capable of performing past relevant work as a box bender. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (Tr. 52). In reaching this result, the ALJ found that: "Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the DOT." (Tr. 53). The ALJ reached this conclusion even though the Dictionary of Occupational Titles box bender job description differed materially from both the evidence and the RFC in terms of both the exertional and reaching requirements of this job. On the basis of this conclusion, the ALJ denied Martinez's claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Martinez launches a wide ranging challenge to this disability determination, including an argument that there is an unexplained disparity between the limited light work RFC found by the ALJ and the Dictionary of Occupational Titles' greater exertional demands for the job of a box

10

bender. (Doc. 11, at 28). While the Commissioner has provided a fulsome response to many of the arguments advanced by Martinez on appeal, the Commissioner has not directly responded to Martinez's claims concerning the inconsistencies between the RFC and the Dictionary of Occupational Titles job descriptions in this case. Upon consideration, we find that there is a material, unexplained, and potentially prejudicial discrepancy here between what the ALJ found Martinez could do and what the Dictionary of Occupational Titles says he must do to fulfill the role of a box bender. Therefore, we will remand this case for further consideration and evaluation of the evidence.

## III.  <u>Discussion</u>

### A.  <u>Substantial Evidence Review – the Role of this Court</u>

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.  See 42 U.S.C. §405(g); <u>Johnson v. Comm'r of Soc. Sec.</u>, 529 F.3d 198, 200 (3d Cir. 2008); <u>Ficca v. Astrue</u>, 901 F. Supp.2d 533, 536 (M.D.Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Pierce v. Underwood</u>, 487 U.S. 552, 565 (1988).  Substantial

evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971).  A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.  Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993).  But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966).  "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D.Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks

omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D.Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are

enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

**B.**    **Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); see also 20 C.F.R. §§404.1505(a), 416.905(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §§404.1520(a), 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed

15

impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").  20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC).  RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e),  404.1545(a)(1),  416.920(e),  416.945(a)(1).    In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.  20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

Once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D.

Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.  20 C.F.R. §§404.1512(f), 416.912(f); Mason, 994 F.2d at 1064.

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and state that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller, 962 F.Supp.2d at 778–79 (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that "[t]here is no legal

requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F.Supp.3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting, like that presented here,  where well-supported medical sources have opined regarding limitations which would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when no medical opinion supports a disability finding or when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony

regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington, 174 F. App'x 6; Cummings, 129 F.Supp.3d at 214–15. In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113; see also Metzger v. Berryhill, 2017 WL 1483328, at *5; Rathbun v. Berryhill, 2018 WL 1514383, at *6.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-707. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis

for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F. 3d 429, 433 (3d Cir. 1999).

## C.    Resolving Inconsistencies Between a Claimant's RFC and the Dictionary of Occupational Titles.

This case implicates the ALJ's duty of articulation and involves a recurring issue that arises in Social Security appeals; namely, what must an ALJ do when confronted with inconsistencies between a claimant's residual functional capacity and the job descriptions set forth in the Dictionary of Occupational Titles? With respect to this question, the answer is clear. When presented with such a discrepancy:

> an ALJ is required to (1) ask, on the record, whether the VE's testimony is consistent with the DOT, (2) "elicit a reasonable explanation" where an inconsistency does appear, and (3) explain in its decision "how the conflict was resolved." Burns v. Barnhart, 312 F.3d 113, 127 (3d Cir.2002). An ALJ's failure to comply with these requirements may warrant remand in a particular case. Rutherford, 399 F.3d at 557.

Zirnsak v. Colvin, 777 F.3d 607, 617 (3d Cir. 2014).

This duty to reconcile and explain inconsistencies between a claimant's RFC and the Dictionary of Occupational Titles stems from several sources. First, it is required by the Commissioner's own rules, which provide that:

> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will: Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and [i]f the VE's or VS's

evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict. When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

Pol'y Interpretation Ruling : Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Info. in Disability Decisions, SSR 00-4P (S.S.A. Dec. 4, 2000). But beyond the articulation requirements set by SSR 00-4P, the court of appeals has independently "developed and applied a broader view of the ALJ's obligation to develop the record fully." Rutherford v. Barnhart, 399 F.3d 546, 557 (3d Cir. 2005). Therefore, "inconsistencies between vocational expert testimony and DOT information may run afoul of that more general requirement—and may warrant reversal as a result—even when they do not come within the literal obligation imposed by SSR 00–4p." Id.

It is against these legal benchmarks that we assess the instant appeal.

## D.    **This Case Should Be Remanded.**

In our view, in this case the ALJ's analysis failed to adequately resolve the inconsistencies between Martinez's residual functional capacity, as found by the ALJ, and the requirements of the past relevant work of a box bender, as defined by

the Dictionary of Occupational Titles. As we have noted, an array of factors led to the cascading confusion which yielded this result. These factors included Martinez's inability to clearly articulate the nature of the temporary work he performed in 2014, as well as confusion by both the vocational expert and the ALJ concerning the nature of that work. However, taken in combination, this compounding confusion now compels a remand of this case.

In our view, there are at least two material inconsistencies between the RFC found here and the Dictionary of Occupational Titles' job description for a box bender. First, Martinez's RFC limited him to a specific range of light work. However, the Dictionary of Occupational Titles plainly states that a box bender job is:

> Medium Work - Exerting 20 to 50 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or 10 to 25 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or greater than negligible up to 10 pounds of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. *Physical demand requirements are in excess of those for Light Work.*

641.687-010 Box Bender, DICOT 641.687-010 (emphasis added). Therefore, by its terms this job description imposes physical requirements beyond those set for light work or those found by the ALJ.

22

In addition, Martinez's RFC provided for only occasional overhead reaching with the bilateral upper extremities. Yet, the Dictionary of Occupational Titles demands far more and requires that a box bender be able to engage in constant reaching and handling.

In our view, these are material inconsistencies between the RFC and the Dictionary of Occupational Titles which require reasoned reconciliation. And while the vocational expert attempted to provide some explanation for these inconsistencies, those explanations do not withstand close scrutiny or satisfy the ALJ's legal duty of articulation.

At the outset, as we have previously noted, in her testimony on this score the vocational expert qualified her opinion by stating that Martinez could only do light work as a box bender, alleging that she recalled Martinez to have testified that he lifted twenty pounds at this box making job. (Tr. 91). The vocational expert's recollection, however, was at odds with Martinez's actual testimony. When asked what was the most he lifted when making boxes in 2014, Martinez testified that he was limited to lifting "three or four pounds." (Tr. 70).

This confusion, in turn, reveals a deeper flaw in this aspect of the analysis. Martinez's description of the box making work he actually performed in 2014 explained that this task was a part-time, seated form of work that involved lifting no

23

more than three or four pounds. Therefore, as described by Martinez this was unskilled sedentary work, and not light work, as asserted by the vocational expert. Compare 20 C.F.R. § 404.1567(a) with 20 C.F.R. § 404.1567(b). Moreover, if we conclude that Martinez, a worker in his sixties, could only perform unskilled sedentary work, a conclusion consistent with the treating source consensus in this case, then under the Commissioner's medical vocational guidelines he would be deemed disabled. See 20 C.F.R. § Pt. 404, Subpt. P, App. 2. Thus, the unresolved and unaddressed discrepancy between Martinez's testimony and the testimony of the vocational expert could well be outcome determinative and require a finding in favor of the plaintiff.

Likewise, the discrepancy between Martinez's RFC, which provided for only occasional overhead reaching with the bilateral upper extremities, and the Dictionary of Occupational Titles' requirement that a box bender be able to engage in constant reaching and handling is not adequately explained or addressed on this record. Indeed, this inconsistency concerning the amount of reaching required by the box bender job and Martinez's physical limitations is not even acknowledged  by the vocational expert or ALJ. Instead, the vocational expert merely noted that the Dictionary of Occupational Titles does not specifically address directional limits on reaching. (Tr. 92). However, in this case the material inconsistency between

Martinez's RFC and the Dictionary of Occupational Titles does not relate to the *direction* of reaching. Rather, the discrepancy involves the *degree* of reaching, which the RFC says can only be occasional, but the Dictionary of Occupational Titles mandates should be constant. This, too, is a material inconsistency which remains unaddressed, unacknowledged, and unexplained in the ALJ's decision.

Since the ALJ's burden of articulation is not met in the instant case, this matter must be remanded for further consideration by the Commissioner. Yet, while we reach this result, we note that nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Rather, the task should remain the duty and province of the ALJ on remand.

### IV.  <u>Conclusion</u>

Accordingly, for the foregoing reasons, IT IS ORDERED that the plaintiff's request for a new administrative hearing is GRANTED, the final decision of the Commissioner denying these claims is vacated, and this case is remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge